# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RICHARD V. MUELLER, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 08–cv–00185–DRH–SCW |
| | ) | |
| BRADLEY J. ROBERT, Warden, | ) | |
| Centralia Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### INTRODUCTION

On October 27, 2000, after a bench trial, Petitioner Richard V. Mueller ("Mueller") was convicted of first-degree murder by Judge Edward C. Ferguson, Circuit Court of Madison County, Illinois. He was sentenced to a term of imprisonment of forty-five years. Now before the Court is Mueller's Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1).

### PROCEDURAL HISTORY

Mueller filed a direct appeal in state court claiming that references to polygraph evidence denied him a fair trial, and that trial counsel was ineffective for allowing the introduction of this evidence, along with evidence regarding Mueller's history of violence (Doc. 11-1). Mueller's direct appeal was denied because the appellate court found that the facts of his case supported the trial court's decision to allow the introduction of polygraph evidence, and that even if

the evidence was improperly admitted, any resulting error was harmless. Regarding Mueller's ineffective assistance claim, the appellate court found that evidence of Mueller's violent history would have been admissible even if his counsel had not opened the door; that the introduction of polygraph evidence was not error, and that both of these decisions by defense counsel represented reasonable trial strategy. Thus, Mueller failed to show that his counsel was ineffective under the reasonableness prong of the test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984) (Doc. 11-1). Mueller petitioned for leave to appeal to the Illinois Supreme Court but that petition was denied on February 5, 2003 (Doc. 1, p. 3).

On August 5, 2003, Mueller filed a petition for post-conviction relief under the Illinois Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.*), on several grounds: (1) ineffective assistance of trial counsel at sentencing for failing to investigate or present certain mitigation evidence, including a number of potential witnesses; (2) denial of due process rights because the trial court disregard Muller's expert's testimony regarding his negative reaction to Prozac, and (3) disproportionality of Mueller's sentence when compared to the sentence received by Sandra Merrifield, a woman who pled guilty in an unrelated case (Doc. 1, pp. 3-4). This relief was denied at the trial level when the trial court granted the State's motion to dismiss Mueller's petition on August 29, 2005 (Doc. 11-6). The trial court dismissed the petition, *inter alia*, because it found that the affidavits provided by Mueller were insufficient to show that his trial counsel's representation "fell below minimum constitutional standard established by

*Strickland v. Washington*, 466 U.S. 688 [sic] (1984), or that the outcome of the case would have been different" (Doc. 11-6, p. 4). Mueller filed a motion with the trial court to reconsider this dismissal, but this too was denied (Doc. 11-7). First, the trial court noted that the evidence presented by way of affidavit was known to Mueller at the time of his initial appeal and could have been raised on direct appeal. *Id.* The trial court further noted that the proffered affidavits were of limited evidentiary value, containing "nothing more than cumulative evidence concerning ancillary issues[,]" and they did not "support a finding that the outcome would have been different, had the witnesses testified" (Doc. 11-7, p. 2).

Mueller appealed the dismissal of his post-conviction petition to the Illinois Fifth District Appellate Court.

## Relevant Facts

The following recitation of facts concerning Mueller's conviction and post-conviction proceedings is summarized from the Illinois Appellate Court's Rule 23 Order issued on July 26, 2007, denying Mueller's collateral appeal (Doc. 11-8, pp. 1-9):

Mueller was indicted on two counts of first-degree murder for the July 6, 1997 death of his wife, Kim. At a bench trial, the State presented evidence of a history violence against Kim by Mueller, that they had marital difficulties, that Mueller drowned Kim forcibly in a bathtub in their home after an argument and struggle, that Mueller left Kim face down in the bathtub and left to take his

children to camp without calling for help, and that the physical evidence did not support a conclusion that Kim's death was an accident.

Mueller presented evidence that six months prior to Kim's death, he began taking Prozac, an antidepressant that was prescribed for his long-term depression. Mueller, and his mother, father, and brother testified to a dramatic personality change after he began taking Prozac. They testified that Mueller changed from "being depressed and painfully shy to being extremely energetic and outgoing" (Doc. 11-8, p. 2). Mueller's family testified that the positive changes from Prozac were followed by a transition to Mueller becoming obnoxious and unreasonable, which led the family to issue him an ultimatum: either see a psychiatrist and change medications or lose both family and job (working for the family's business). Mueller set an appointment date which unfortunately arrived four days after Kim's death.

Mueller testified that on the day of Kim's death, she was "fussing" at him for the way he was cleaning up after the previous night's party. Mueller loaded his children, Megan (age 14) and Matt (age 8), into Kim's van to take Megan to camp, but realized he needed his checkbook and went back into the house to get it. While inside, with the children still in the van, Kim told Mueller that they needed to talk when he returned. Kim was in the bathroom, cleaning it, with the water running in the bathtub, and Mueller stepped into the doorway; an argument ensued and in a physical struggle Mueller and Kim lost their footing, causing Kim to hit her head as he fell on top of her in the bathtub. Mueller panicked and fled with the children. After driving a short distance, he became worried about Kim,

fabricated an excuse, and returned to the house. Mueller testified that he found Kim in the tub, could not see anything but her hair, picked her up, put her back down in the water after hearing a knock at the door, changed out of wet shorts and left again to take Megan to camp. He told Megan that Kim had waved goodbye, but he did not tell the children what had transpired or call for help. Mueller testified that he knew he was going to be in big trouble. Mueller also admitted that he lied to his children post-incident and lied to the police when questioned about Kim's death. Mueller's mother discovered Kim dead in the bathtub and called the police.

At sentencing, the State presented aggravation evidence regarding a 1986 incident where Mueller broke into the home of Kim's mother, who was babysitting Megan at the time, and pulled his mother-in-law's hair, knocked her down, kicked her in the chest, and left with Megan. Two of Kim's siblings testified to Kim's marital problems with Mueller, as well as Mueller's problems with others. David Bradford, an investigating officer, testified to Mueller's mother's statement that Mueller had a violent temper, that Mueller was to move out of the marital residence the day of Kim's death, and that she thought Mueller had killed Kim and fled with the children.

Mueller presented mitigating evidence in the form of a written statement read by his daughter Megan, and testimony from his parents and brother about his dramatic personality changes after he started taking Prozac. The family testimony was to the effect that, but for the Prozac, Kim's death would not have happened. Mueller testified as well, expressing remorse and admitting

responsibility for Kim's death. Mueller also explained his problems with depression and "admitted that he had written several 'nasty' letters to family members from jail" in which he had not accepted responsibility for his actions (Doc 11-8, p. 4).

The state requested an extended term sentence of 100 years, and the defense stressed Mueller's mental health issues and requested mercy. The trial court sentenced Mueller to 45 years of imprisonment, based largely upon the strong physical evidence, testimony, and statements given to police. The trial court specifically found that Kim's death was intentional, not accidental, and that the evidence did not support an accidental cause. The court found that Mueller's actions—forcibly drowning Kim and then coming back and leaving her in the water—"were very cruel and intentional" (*Id.*). The court noted that the Prozac did not limit Mueller's liability under the law for his acts, and it did not feel that Prozac had much impact on what happened that day, despite Dr. Eric Miller's testimony. The court noted the importance of taking responsibility for one's actions and that specifically, based on Mueller's conduct, Mueller's continuing statements about his involvement, and his "stale attempts to deflect blame on other people," a 45 year sentence was appropriate in this case (*Id.* at 5).

In his post-conviction proceedings, Mueller alleged that he was denied effective assistance of counsel[1] because his "trial counsel failed to call several

---

[1] Mueller also alleged denial of due process and gender discrimination in sentencing, but he did not raise these claims on appeal at the post-conviction stage and thus, they were not exhausted. Accordingly, these claims are not before this Court.

witnesses that would have refuted the State's evidence of Mueller's history of violence toward Kim and would have corroborated Dr. Miller's testimony about hypomania, an antidepressant-induced mood disorder" (*Id.*). In support, Mueller attached twelve affidavits to his post-conviction petition. The affidavits were intended to refute testimony about the violent history between Mueller and Kim and show that their marriage was not as bad as it had been described by some of the State's witnesses; to argue that Mueller's personality change and conduct was due to Prozac, and that the actions Mueller took were inconsistent with his character; and that defense counsel should have called more witnesses to testify on these matters.

The trial court entered an order granting the State's motion to dismiss, relying upon Mueller's Petition and affidavits, the court record, the Illinois Appellate Court's Rule 23 Order on direct appeal, the arguments of counsel, and statutory and case law authority. The trial court specifically noted that the affidavits: were based primarily on opinion that Mueller could not have knowingly killed his wife; ignored the factual evidence presented at trial; and contained "virtually no new factual information" (Doc. 11-6, p. 4). The trial court found that even if the affidavits were accepted as true, they were insufficient to show that trial counsel's performance fell below the constitutional minimum standard outlined in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984), "or that the outcome of the trial would have been different" (Doc. 11-8, p. 10).

The trial court also felt that matters raised in the post-conviction petition were either waived or barred by *res judicata* because those matters were raised,

or could have been raised, on direct appeal. The trial court denied Mueller's motion to reconsider with the note that the proffered affidavits were of little evidentiary value, were not "new evidence", and were cumulative of ancillary issues (*Id.* at 11). The court again noted that even if the affidavits were accepted as completely true, they failed to support a finding that the outcome would have been different but for counsel's failure to present that testimony. This ends the summary of the factual findings by the Illinois Court of Appeals on Mueller's post-conviction appeal.

The Illinois Appellate Court affirmed the trial court's decision, analyzing the ineffective assistance of trial counsel claim under the precedents of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984) and *People v. Simpson*, 204 Ill. 2d 536, 563 (2001). The appellate court found defense counsel's performance—including the presentation of at least four mitigation and two expert witnesses—did not fall below an objective standard of reasonableness. Mueller's request for post-conviction relief was finally disposed of when the Illinois Supreme Court denied his petition for leave to appeal on November 29, 2007 (Doc. 11-14).

## GROUNDS FOR HABEAS RELIEF

Petitioner asserts only one basis for relief in his original petition for habeas corpus:

> Petitioner's conviction violates the Constitution of the United States because of ineffective assistance of counsel for failing to investigate and present specific named mitigation witnesses other

than Petitioner's immediate family, in violation of Amendment VI (right to effective assistance of counsel) and Amendment XIV (deprivation of liberty without due process of law) (Doc. 1, p. 5).

**Exhaustion and Procedural Default**

Mueller must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). Before seeking habeas relief, a petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728 (1999), *see also* 28 U.S.C. §2254(c). Under the Illinois two-tiered appeals process, petitioners such as Mueller must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. *Id*. at 843-846.

Here, Respondent has admitted that Mueller's remaining ineffective assistance claim was exhausted (Doc. 11, p. 12). However, Respondent contends that Mueller's claim as to ineffective assistance of counsel during trial, as opposed to at sentencing, was procedurally defaulted (Doc. 11, pp. 18-20). Mueller argues that there was no such default based on which phase the mitigation evidence should have come in (Doc. 17, pp. 2-3). From the Court's perspective, Respondent is attempting to split procedural hairs in order to generate an ancillary argument. Mueller's only remaining habeas claim—that trial counsel

was ineffective for failing to investigate or present certain mitigation evidence, including witnesses—was not procedurally defaulted. And whether additional mitigating evidence should have been produced during trial as opposed to sentencing is not dispositive of Mueller's remaining claim. Further, in light of the complete Record, the language cited by Respondent in his Response (Doc. 11, p. 18) is insufficient to establish a default of mitigation testimony during trial prior to Mueller's sentencing. The Court therefore proceeds to the merits of Mueller's claim.

### 28 U.S.C. §2254—Legal Standards

Mueller's habeas petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal habeas court's role in reviewing state prisoner applications was modified by AEDPA "in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Under AEDPA, federal habeas relief is barred for any claim adjudicated on the merits in state court, "unless one of the exceptions listed in 28 U.S.C. §2254(d) obtains." *Premo v. Moore*, 131 S.Ct. 733, 739, 178 L.Ed.2d.649 (2011). A district court must assess the decision of the last state court to rule on the merits of the claim. *Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006). Further, "[u]nder AEDPA, it is a state court's resolution of an issue, as opposed to its reasoning process, that must be treated with deference." *Hough v. Anderson*, 272 F.3d 878, 897, n.7 (7th Cir. 2001), *citing Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir.1997) (the state court resolution need not be well reasoned, rather, the

standard is "whether the determination is at least minimally consistent with the facts and circumstances of the case.")

Under 28 U.S.C. §2254(d), habeas relief is denied unless the adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court hearing." A judgment is "contrary to" Supreme Court precedent if the state court made a statement of law inconsistent with one made by the Supreme Court, or if the state court decided differently from the Supreme Court a case with "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The Seventh Circuit has noted that the scope of federal review on habeas is "strictly limited," and that the unreasonable application standard is "a difficult standard to meet." *Jackson v. Frank*, 348 F.3d 658, 661-662 (7th Cir. 2003).

In the absence of stated reasoning by the state court, or even where there has been a summary denial, a federal habeas court still must determine what arguments or theories supported—or could have supported—the state court decision. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1402 (2011), *citing Harrington v. Richter.* 131 S.Ct. 770, 786 (2011). Once these arguments or theories have been identified, then a habeas court "must ask whether it is possible fairminded jurists

could disagree that those arguments or theories are inconsistent with [Supreme Court precedent]." *Id.* This is an objective inquiry. When there is no possibility fairminded jurists could disagree that the state court's decision conflicts with Supreme Court precedents, then the writ may issue. *Id.* In other words, even where a state court fails to state its reasoning, the habeas petitioner's burden must still be met by showing there was no reasonable basis for the state court to deny relief. *Harrington*, 131 S.Ct. at 784 (2011).

### Ineffective Assistance of Counsel

Analysis under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984)—the Supreme Court precedent at issue here—and habeas review under § 2254 are both highly deferential. And when, as here, both apply, the review is "doubly" deferential. *Harrington*, 131 S.Ct. at 788. *Strickland* requires that a petitioner on an ineffective assistance of counsel claim must prove 1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and 2) "that the deficient performance prejudiced the defense" ("the prejudice prong"). *Strickland*, 466 U.S. at 688, 692. In order for the writ to issue, a habeas petitioner must satisfy both prongs of the *Strickland* analysis. However, there is no mandatory order for the analysis, and a habeas Court does not even need "to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

Under *Strickland's* performance prong a Court inquires into "the objective reasonableness of counsel's performance." *Harrington*, 131 S.Ct. at 790. "*Strickland* does not guarantee perfect representation, only a 'reasonably

competent attorney.'" *Id.* at 791, *quoting Strickland*, 466 U.S. at 687. The reasonableness of counsel's challenged conduct is judged on the facts of the particular case, "viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. There is a strong presumption of adequate assistance and the exercise of reasonable professional judgment to avoid the temptation to second-guess counsel's assistance. *Id.* at 689. There is also a strong presumption "that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington*, 131 S.Ct. at 790, *quoting Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). And, of particular import to the petition at bar, *Strickland* has not enacted a rigid formula requiring for every prosecution witness an equal and opposite witness from the defense. *Id.* at 791. Indeed, a petitioner's right to effective assistance of counsel is violated only when counsel's conduct, in light of all the circumstances, "[was] outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Under *Strickland's* prejudice prong, a petitioner must show that, but for counsel's deficient conduct, "it is 'reasonably likely' the result would have been different. *Harrington*, 131 S.Ct. 791-92. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 792. So, with respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Strickland,* 466 U.S. at 694.[2]  Ultimately, "[t]he focus of the *Strickland* test for prejudice … is not simply whether the outcome would have been different; rather, counsel's shortcomings must render the proceeding fundamentally unfair or unreliable." *Gray v. Hardy*, 598 F.3d 324, 331 (7th Cir. 2010).

In summary, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process such that the trial cannot be relied on has having produced a just result." *Strickland*, 466 U.S. at 686.  However, "[w]hen § 2254 applies, the question is not whether counsel's actions were reasonable … [but] whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 131 S.Ct. at 788.  In other words, when treated with the latitude and deference mandated in the habeas context, was the state court's resolution of the ineffective assistance claim reasonable?

### Application to Petitioner Mueller's Habeas Claim

Here, Mueller claims his trial counsel was ineffective because he failed to adequately investigate and call certain mitigation witnesses for sentencing, and that the State Courts' decisions regarding his counsel's performance were either contrary to, or an unreasonable application of the clearly established standards established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984) (Doc. 1).

---

[2]

*Strickland's* prejudice standard "does not require a showing that counsel's actions 'more likely than not altered the outcome.'" *Harrington*, 131 S.Ct. 791-92, *quoting Strickland*, 466 U.S. at 693, 697. However, practically speaking, the difference between *Strickland's* reasonable probability standard and a "more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.*

The state trial court held that, even if all of the allegations and affidavits presented in the post-conviction petition were true, Mueller presented insufficient evidence that trial counsel's conduct was so ineffective that it fell below minimum constitutional standards established in *Strickland*, or that the outcome of the case would have been different (Doc 11-6). The Appellate Court of Illinois, Fifth Circuit, affirmed, noting that defense counsel presented a "very thorough defense," including extensive testimony from Mueller himself, an expert witness, Dr. Kevin Miller, and many of Mueller's closest family members (mother, father, daughter, brother) in mitigation (Doc. 11-8). Accordingly, the Illinois Appellate Court determined that Mueller's trial counsel's performance was not objectively unreasonable and as such, they did not specifically address the second prong of *Strickland* regarding prejudice (other than briefly noting that Mueller did not show that the outcome of his case would have been different). *Id.* Because the Illinois Supreme Court chose not to examine the Appellate Court's Rule 23 Order, this is the governing opinion for purposes of this Court's habeas review. *See Winston v. Boatwright*, ---F.3d--- , 2011 WL 3634160 *9 (7th Cir. August 19, 2011).

Pursuant to 28 U.S.C. §2254(d)(1), Mueller argues that the State Appellate Court's decision regarding his ineffective assistance of counsel claim was contrary to or an unreasonable application of *Strickland*.[3] So, the complete question now

---

[3] Mueller however is not arguing that the controlling state court decision was based on an unreasonable determination of the facts in light of the evidence under 28 U.S.C. §2254(d)(2). Mueller does argue that the 2005 decision of the state *circuit* court was contrary to, or involved an unreasonable application of, the ineffective assistance standard promulgated in *Strickland*. This argument will be ignored because the circuit court was not the last state court to rule on the merits of Mueller's claim,

before this Court is whether the state appellate court's decision—that Mueller's trial counsel's performance was objectively reasonable—was, in fact, either contrary to or an unreasonable application of Supreme Court precedent, while keeping in mind the doubly deferential review standard required when analyzing an ineffective assistance of counsel claim under 28 U.S.C. §2254. *See Harrington*, 131 S.Ct. at 788.

The Illinois Appellate Court's decision was consistent with and a reasonable application of the Supreme Court's clearly established precedent in *Strickland.* First, the Illinois Appellate Court correctly identified the governing legal principles from *Strickland* (*see* Doc. 11-8, p. 13). After correctly setting forth *Strickland's* two-pronged test, the Illinois Appellate Court summarized an ineffective assistance claim as whether counsel's conduct "rendered the result of the trial unreliable or the proceeding fundamentally unfair" (Doc. 11-8, p. 13, *citing People v. Enis*, 194 Ill. 2d 361, 376 (2000) (which, in turn, cites to *Strickland*)). The Illinois Appellate Court later noted that trial counsel's strategy is presumed reasonable unless "counsel's strategy was so unsound that no meaningful adversarial testing was conducted." *Id.*, *citing Enis*, 194 Ill. 2d at 378. This is a fair restatement of *Strickland's* "benchmark for judging any claim of ineffectiveness"; namely, "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686. Accordingly, the Illinois Appellate Court

---

at least regarding the performance prong of *Strickland* which, in this case, is dispositive. *See Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006).

did not make any statement of law that was inconsistent with the Supreme Court's clearly established precedent. Moreover, Mueller has not provided this Court with any case with "materially indistinguishable facts" that was ruled on differently by the Supreme Court. As a result, Mueller has failed to show that the Illinois Appellate Court's decision was contrary to clearly established federal law.

Mueller has also failed to demonstrate that the Illinois Appellate Court unreasonably applied the correctly stated *Strickland* standard to the facts of his case. The heart of Mueller's argument here is that Illinois Appellate Court's decision was an objectively unreasonable application of *Strickland* and *Wiggins v. Smith*, 539 U.S. 510, 529-30 (2003), because the court "failed to examine trial defense counsel's decision not to contact or present the affiants for reasonableness" (Doc. 17, p. 28). Mueller further argues that both *Strickland* and *Wiggins* require that trial counsel's "particular decision[s] not to investigate must be directly assessed for reasonableness in all the circumstances applying a heavy measure of deference to counsel's judgments" (*Id., quoting Strickland*, 466 U.S. at 690-91, and *Wiggins*, 539 U.S. at 521-22.). In essence, Mueller argues that because the Illinois Appellate Court failed to assess trial counsel's particular decisions not to investigate, or identify trial counsel's strategy, and because no specific strategy or bases for his decisions were offered by trial counsel, the appellate court could not have reasonably applied *Strickland* and *Wiggins.*

Mueller however concedes the fact that it is proper for respondent (and ostensibly reviewing courts as well) "to rely on counsel's apparent strategy" even where no specific strategy is expressed (Doc. 17, p. 32). This is not a case where

trial counsel failed to conduct any investigation at all, or failed to present any mitigating evidence. Rather, as Mueller concedes, the facts of this case "give a clear picture of trial defense counsel's sentencing strategy … to show, and argue[ ] that petitioner had a long history of mental illness, that the marriage was good, that Prozac had a dramatic effect on petitioner, and that petitioner's wife would still be alive if not for Prozac" (*Id.* at 31). In order to carry out his mitigation strategy, Mueller's defense counsel chose to elicit testimony from four witnesses: Mueller's daughter Meagan, his father, mother and brother Ronald. As the Illinois Court of Appeals noted, "[t]he defendant does not explain how four [mitigation] witnesses amount to nobody telling his side of the story" (Doc. 11-8, p. 11). So, not only was defense counsel's sentencing strategy apparent, it was apparent to the Illinois Appellate Court that trial counsel's decisions—regarding which witnesses to present in support of his mitigation strategy—also were reasonable.

In light of the mitigating evidence that Mueller's trial counsel did, in fact, present throughout the trial and at sentencing, this Court *could* find that trial counsel's choices not to present certain witnesses are "virtually unchallengeable" because, apparently, they were made after a thorough investigation. *Wiggins*, 539 U.S. at 521, *quoting Strickland*, 466 U.S. at 690-91. However, because no state court elicited any specific evidence regarding trial counsel's investigation, and because Mueller has presented some evidence that at least a few potential mitigation witnesses may not have been contacted by trial counsel, the Court will assume that, here, trial counsel made his decisions or choices after a less than complete investigation. Accordingly, these choices are "reasonable precisely to

the extent that reasonable professional judgments support the limitations on investigation." *Id.* So, this Court must determine whether the Illinois Appellate Court's application of this particular standard to the particular facts of Mueller's case was objectively reasonable. In light of the doubly deferential standard of review in the habeas context, the Court has no trouble finding that it was.

The Supreme Court recently held that "*Strickland* itself rejected the notion that the same investigation will be required in every case." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1406-07 (2011), *citing Strickland*, 466 U.S. at 691. The *Pinholster* Court also reiterated that, at a certain point, a defense attorney may "reasonably decide that another strategy is in order, thus 'mak[ing] particular investigations unnecessary.'" *Id.*, *quoting Strickland*, 466 U.S. at 691. So, in the end, "counsel has a duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary." *Id.* Here, Mueller's trial counsel did both. That is, trial counsel made some reasonable investigations—as evidenced by the mitigation case that he presented—and trial counsel made other reasonable decisions that further investigations were unnecessary. Thus, in light of trial counsel's reasonable performance, the Illinois Appellate Court's application of *Strickland* was also reasonable.

In support of his arguments to the contrary, Mueller offered as part of his original Petition twelve affidavits of either family members or close friends, many of whom allege that they were willing to testify on Mueller's behalf at sentencing but never called. First, with regard to the allegation that trial counsel failed to investigate these witnesses, only two of these affiants specifically allege that trial

counsel did not contact them, Michael Andrew and Melissa Sue Simmons (Doc. 11-20 pp. 28-31). However, both Mr. and Mrs. Simmons' affidavits note that many people who had attended a party at the Mueller's house the night before Kim's murder were contacted by investigators. *Id.* In other words, Mueller's own evidence explicitly supports the notion that trial counsel did in fact conduct an investigation. One additional affiant, Kevin Davis Ransdell, stated that Mueller's trial counsel "did not contact ANY of the people that were friends with them and knew them as a couple" (Doc. 11-20, p. 27). This sworn statement, however, is directly contradicted by Mr. and Mrs. Simmons' statements that friends who had attended a party at the Mueller's were contacted by investigators. Moreover, close family members who testified on behalf of Mueller comprised four of the twelve affidavits (Docs. 11-15 to 11-19). Trial counsel obviously interviewed these witnesses as part of the mitigation case that he presented on Mueller's behalf.[4]

Of the five remaining affiants—one of whom is Mueller's son Matthew and another, his aunt—none explicitly states that they were not *contacted* by trial counsel. Rather, many of these affiants state that they cannot understand why Muller's lawyer "did not call me to testify," or that trial counsel "should have called upon more people close to Rich and Kim to testify." (*see*, *e.g.*, Doc. 11-20, pp. 7, 22). In summary, rather than supporting his claim that trial counsel conducted an ineffective investigation, the evidence provided by Mueller actually

---

[4] The Court notes that Mueller's mother, Rosemary Mueller, did in fact testify on his behalf at sentencing (*see* Doc. 11-17, p. 5). In her affidavit she states "I also wanted [defense counsel] to call me as a witness...." The Court assumes that Mrs. Mueller is referring to the opportunity to testify at trial.

offers more support to the contrary. Thus, based on the evidence available to the Illinois Appellate Court, trial counsel conducted an objectively reasonable investigation. It follows then that, when viewed through the deferential lens of §2254(d), the Illinois Appellate Court's application of the *Strickland* performance prong standard to the facts of this case was also objectively reasonable.

Even assuming *arguendo* that Mueller's trial counsel did not investigate all twelve of the proffered affiants (or other potential mitigating witnesses—a list that undoubtedly is very large,) any decision by trial counsel not to investigate particular individuals also was objectively reasonable. Once again, Mueller's affidavits support the fact that his trial counsel conducted an investigation and then presented four mitigation witnesses, in addition to Mueller's extensive testimony, at sentencing. As a result, Mueller's defense counsel at some point likely determined that he had enough witnesses to present a strong mitigation case and so additional witnesses—especially those likely to offer cumulative testimony—were unnecessary.

Mueller argues that it would be unreasonable for his trial counsel to reject the uncalled affiants merely as cumulative. In support of this contention, Mueller claims that his situation at sentencing was analogous to the situation in *Raygoza v. Hulick* where, at trial, no one but defendant's girlfriend corroborated his account because defense counsel decided not to investigate a number of potential alibi witnesses. 474 F.3d 958, 964. Mueller's situation, however, is readily and obviously distinguishable from *Raygoza's*: Mueller's trial counsel put on four witnesses during sentencing in support of his broad defense strategy, and he did

not fail to investigate key witnesses. Accordingly, based on the mitigation case that he did in fact present, it was reasonable for Mueller's trial counsel not to investigate additional potential mitigation witnesses.

Once again, Mueller's own evidence supports the Illinois Appellate Courts' determination that it was reasonable for Mueller's defense attorney not to offer this additional testimony at sentencing. First, eleven of the twelve affidavits offered by Mueller in support of his Petition provide only additional testimony about matters which already had been addressed by other witnesses in mitigation; specifically, that Mueller's personality changed under the influence of Prozac, that the marriage of Mueller and his Kim was not as bad as was portrayed by the State, and that Mueller should be shown mercy (*see* Affidavits at Doc. 11-20, pp. 7-31). So, this testimony was essentially cumulative of that offered by those witnesses who did testify either at trial and/or during the sentencing phase: Megan Mueller, Ronald Mueller, Rosemary Mueller, and Richard Mueller, Senior, in addition to Defendant Mueller himself (Docs. 11-15 to 11-19).

Second, the testimony that is not cumulative offers only lay opinion on the allegedly negative effects of Prozac upon Mueller, and the conclusion that Mueller was incapable of knowingly or intentionally killing his wife. The lay observations that Mueller was a very different person on Prozac are redundant of the expert testimony of Dr. Kevin Miller—Mueller's psychiatrist who testified at length at trial regarding Mueller's hypomania, a "substance[-]induced mood disorder" (Doc. 11, p. 10). Dr. Miller thoroughly detailed the negative symptoms of hypomania and the potential for it to make Mueller "more likely to engage in violent behavior than

others" (*Id.*). When sentencing Mueller, however, the trial judge made it clear that he "[did] not feel that the Prozac had much of an impact on anything that happened that day" (Doc. 11-19. Pp. 31-32). This statement buttresses the conclusion that it was reasonable for defense counsel not to put forth additional lay testimony regarding the effects of Prozac on Mueller.

Finally, the trial judge made it clear that, from his perspective, Mueller did not appear to accept responsibility (Doc. 11-19, p.28), and that Mueller attempted to deflect blame onto others (*Id.* at 34). Accordingly, having additional witnesses testify that they could never believe Mueller was capable of intentional murder—when he already had been found guilty of exactly that—likely would have been counter-productive. In light of all the evidence, therefore, the Illinois Appellate Court reasonably applied *Strickland* when it found that defense counsel's conduct did not fall below an objective standard of reasonableness. (Doc. 11-8, p. 14).

In support of his arguments to the contrary, Mueller relies heavily on the Supreme Court's holding in *Wiggins v. Smith*, 539 U.S. 510, 529-30 (2003), but this case also is readily distinguishable. In *Wiggins*, defense counsel decided not to present a mitigation case at all, and instead focused their investigation on disproving Wiggins' direct responsibility for the murder of which he had been convicted. 539 U.S. 510, 518 (2003). As such, the Supreme Court's focus in *Wiggins* was "whether the investigation supporting counsel's decision not to introduce mitigating evidence of Wiggins' background *was itself reasonable*." *Id.* at 523 (citations omitted) (emphasis in original). By contrast, here, Mueller's

defense counsel presented four witnesses in mitigation, in addition to Mueller himself and other mitigating testimony that came out during trial. So here, unlike in *Wiggins*, defense counsel not only decided to put forth mitigating evidence, he also conducted the requisite investigation necessary to determine which evidence, he thought, would be most effective. Accordingly, it was reasonable for the Illinois Appellate Court to find that "[n]othing in the petition, the accompanying affidavits, or the record indicates that defense counsel's performance fell below an objective standard of reasonableness" (Doc. 11-8, p. 14).[5]

<h2 style="text-align:center">CONCLUSION</h2>

In conclusion, Mueller has failed to overcome the strong presumption that, under all of the circumstances, his trial counsel's conduct might be considered sound trial strategy that falls within the "wide range of professionally competent assistance." *Strickland* 466 U.S. at 690 (1984). Indeed, when viewing the state court record, here, not only has the "strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment" been indulged, it has been satisfied. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1402 (2011), *quoting Strickland*, 466 U.S. at 689-90 (quotations omitted). Mueller's trial counsel's performance throughout his case was objectively reasonable.

Additionally, Mueller has failed to meet a habeas petitioner's burden—to show there was no reasonable basis for the state court to deny relief. *Harrington*,

---

[5] This Court's determination that the Illinois Appellate Court reasonably applied the performance prong of *Strickland*, obviates any consideration of *Strickland*'s prejudice prong.

131 S.Ct. at 784 (2011). This is a heavy burden to carry because, once again, even in the absence of stated reasoning by the state court, a federal habeas court still must determine what arguments or theories supported—*or could have supported*—the state court decision. *Pinholster*, 131 S.Ct. at 1402, *citing Harrington v. Richter.* 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011). The Court has done so here, and has determined that Mueller's defense counsel's conduct—including a reasonable investigation and reasonable efforts in support of his mitigation strategy—fell well within the range of possible, reasonable reasons for proceeding as he did. *See Pinholster*, 131 S.Ct. at 1407. It follows then that the Illinois Appellate Court, when reaching the same conclusion, applied *Strickland's* performance standard in an objectively reasonable manner; consistent with Supreme Court precedent.

For the reasons set forth above, the Court **DENIES** petitioner Richard V. Mueller's petition for writ of habeas corpus (Doc. 1). The Court **DISMISSES with prejudice** Mueller's cause of action. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

Further, because the Court was able to reach this conclusion based on the state court record alone, any need for an evidentiary hearing is obviated. Indeed, under these circumstances, *Pinholster* mandates this additional conclusion. 131 S. Ct. 1388, 1398-1400 (2011) ("review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.... When the state-court record 'precludes habeas relief' under the limitations of §2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Quoting Schriro*

*v. Landrigan*, 550 U.S. 465, 474 (2007)).    Accordingly, the Court **GRANTS** respondent's motion to reconsider grant of evidentiary hearing (Doc. 38) and **DENIES as moot** petitioner Mueller's requests for an evidentiary hearing.

      **IT IS SO ORDERED**.

      DATED: September 2, 2011

Digitally signed by
David R. Herndon
Date: 2011.09.02
11:19:43 -05'00'

**Chief Judge**
**United States District Court**